## CHIZUKO TERTROU, Appellant, v. SHERIFF, CLARK COUNTY, NEVADA, Respondent.

No. 7127

May 14, 1973                    509 P.2d 970

*Jerry J. Kaufman,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, and *Lawrence R. Leavitt,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, BATJER, J.:

A criminal complaint was filed in the justice court charging the appellant with the murder (NRS 200.010) of her 15 month old adopted daughter. While a preliminary examination was in progress on April 6, 1972, the magistrate recessed it until April 17, 1972. On April 13, 1972, the grand jury indicted the appellant upon the charged offense. A pre-trial habeas challenge to that indictment resulted in a remand to the grand jury. Thereafter, on June 29, 1972, a second indictment, again charging the identical offense, was returned by the grand jury. Immediately thereafter the justice court proceedings were dismissed.

This appeal is from the denial of a pre-trial habeas challenge to the second indictment. Appellant claims that the trial court should have granted habeas because (1) the grand jury deprived her of due process by indicting her while a preliminary examination was in recess; and (2) the state failed to prove the corpus delicti of the crime charged.

Shortly before 4:00 p.m. on February 2, 1972, Kenneth Bird, of the Las Vegas Fire Department Rescue Squad, was dispatched to appellant's residence. He was met at the entrance by the appellant who was holding the little girl in her arms and stated "my child isn't breathing."

An emergency resuscitator was applied but would not function until Bird removed a piece of meat lodged in the child's throat. The machine then took over the "breathing" and the child was subsequently removed to a hospital. Resuscitation failed and the child died.

During the time Bird was administering to the child the appellant stated that the child did not like the highchair and that she was feeding the youngster on the sofa and while so doing, the baby fell from the sofa and struck her head on the coffee table.

On February 11, 1972, Las Vegas police detective, Lt. John D. McCarthy, together with an interpreter, [appellant is of oriental ancestry and the officer thought there might be a

language barrier] met the accused and recited the warning required by Miranda v. Arizona, 384 U.S. 436 (1966). Appellant acknowledged the warning, indicated that she understood her rights, and declined to have an attorney present, or the use of the interpreter. She then voluntarily gave the detective a detailed narrative of the events that led to the death of the child. After restating her colloquy with Bird, she went on to say that after the child struck her head on the coffee table that she took her to the bathroom and splashed cold water in her face. Unable to revive the child she telephoned her doctor and was advised to call an ambulance. The call for the ambulance was unsuccessful, but she was able to contact the fire department. Then she stated that her prior story had not been entirely truthful and she admitted that she hit the baby on the head with a "spoon" because it was not cooperating in the feeding. At this stage the appellant began to cry and stated that the child was "fussy" and wouldn't eat and she became angry, picked up the child and "I threw her very hard into the play pen . . . I didn't mean to kill her." She also related that previously, in a fall against the water heater, a couple of the baby's front teeth were knocked out and that the baby had also received a slight grease burn through an accident in the kitchen. These latter two injuries had been related to her doctor. Earlier in the tragic day, appellant admitted that she had spanked the child with a plastic ruler because it had pulled down some knitting.

The final witness before the grand jury was Dr. John Wallace Graham, the pathologist who, on February 5, 1972, performed an autopsy on the body of the dead child. His external examination revealed several contusions and abrasions on the forehead and nose and a bruise on the upper back. Internally, he found a piece of food in the right lung. He testified that none of the above findings related to the fatality. He found an "extensive hemorrhage" over the right side of the brain and stated that the cause of death was a "cranial cerebral injury" which could be caused by falling out of a one or two story window, or down a steep flight of stairs, or by "slamming the head against a solid surface." It was Dr. Graham's opinion that such a severe injury could not have been caused by a fall from a couch to a coffee table. He also found a healed fracture of the right base of the baby's skull.

We first consider appellant's challenge to the indictment.

1. It is the rule in this state that felonies may be prosecuted by either indictment or information. An accused who is proceeded against by an indictment is not denied due process or

equal protection. Similarly, to initiate a prosecution by an information rather than an indictment does not violate due process. Cairns v. Sheriff, 89 Nev. 113, 508 P.2d 1015 (1973).

The question of whether an indictment could be returned, while a criminal complaint covering the same offense was outstanding, was raised *sua sponte* by this court in Tellis v. Sheriff, 85 Nev. 557, 459 P.2d 364 (1969). After considering the question we said "we find no jurisdictional defect in such a dual proceeding in a criminal matter." 85 Nev. at 561, 459 P.2d at 366.

■■■■

The fact that a portion of the preliminary examination had been conducted when the indictment was returned neither invalidates nor proscribes the indictment. See Hall v. Sheriff, 86 Nev. 456, 470 P.2d 422 (1970), where we held that an indictment was permissible even though an information had already been filed in the district court.

2. Having concluded that the indictment was permissible we now consider the challenge to the sufficiency of the evidence adduced before the grand jury.

■■■■■

The death of a human being may be brought about by any one of four means: (1) natural causes; (2) accident; (3) suicide; or (4) criminal means. In establishing the corpus delicti of murder two elements must be established: (1) the fact of death; and (2) the criminal agency of another responsible for that death. Beasley v. Lamb, 79 Nev. 78, 378 P.2d 524 (1963).

■■■■■

For the indictment to withstand a challenge by habeas corpus the sufficient legal evidence presented to the grand jury must show (1) probable cause to believe that a crime has been committed, and (2) probable cause to believe that the person charged committed the crime. NRS 172.155.

Here the fact of death is conceded by both parties. However, the appellant contends that evidence is totally lacking to establish that the death was caused by the criminal agency of another. Relying upon Azbill v. State, 84 Nev. 345, 440 P.2d 1014 (1968), and Hicks v. Sheriff, 86 Nev. 67, 464 P.2d 462 (1970), the appellant contends there must be "sufficient evidence to establish the corpus delicti independent of confessions and possibly admissions." Although the law is correctly stated by appellant, it is inapposite to the facts.

■

A similar argument was raised and rejected by us in Simpson v. Sheriff, 86 Nev. 803, 476 P.2d 957 (1970), where there was a total lack of independent medical evidence of traumatic abuse that exists in this record. In *Simpson* we said: "Such a contention is not tenable where the victim is a child one year of age, under the circumstances that existed here. At such age a child is almost totally dependent upon the person having its care and custody, and what might reasonably be found to be a natural cause of death in an adult can just as reasonably be found to be . . . death by a criminal agency, where the victim is a child so dependent upon others." 86 Nev. at 805–806, 476 P.2d at 958.

Once the corpus delicti has been established by sufficient evidence, confessions and admissions may be considered in determining probable cause to show that the defendant was the criminal agency causing the death. In re Kelly, 28 Nev. 491, 83 P. 223 (1905). Here there is ample independent evidence to establish the criminal agency. Appellant's statements were admissible to establish her responsibility for the death.

Affirmed.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and ZENOFF, JJ., concur.